WR-82,629-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/10/2015 1:25:30 PM
Accepted 9/10/2015 2:15:25 PM
ABEL ACOSTA
CLERK

**WR-82,629-01**
**TR. CT. NO. W10-00678-P (A)**

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE TEXAS** |
| | § | |
| | § | **COURT OF** |
| | § | |
| | § | |
| **GERARDO REYNA** | § | **CRIMINAL APPEALS** |

## OBJECTIONS TO THE TRIAL COURT'S FINDINGS AND REQUEST FOR REMAND FOR HEARING

Now comes Gerardo Reyna, Applicant, and files these objections to the trial court's findings of fact and conclusions of law recommending relief be denied. In support thereof, Reyna shows the following:

### I.  Introduction

A shooting occurred at a residential area in Irving at approximately 11:30 p.m. on June 15, 2008. The Dallas Court of Appeals, in its opinion on Reyna's direct appeal, characterized the record as establishing that Reyna shot the deceased as he was dropping off passengers, including the mother of Reyna's child. *Reyna v. State*, No. 05-11-00995-CR, 2013 WL 1317223 (Tex. App.—Dallas 2013, pet. ref'd). At trial, however, Reyna maintained he was not the shooter. The State's primary witnesses otherwise were associates of Reyna who implicated him in the shooting.

1

In Reyna's writ application he complained, among other things, that the prosecution failed to disclose that it offered three key witnesses leniency in exchange for their testimony, which each received after the jury found Reyna guilty. The trial court refused to grant relief, however, because it found: (1) the prosecutor denied offering any witness leniency; (2) that Cardenas received favorable treatment in federal court did not necessarily reflect any deal; and (3) Medina and Cardenas would have testified, regardless.

The trial court's findings are incorrect. There is explicit evidence that the prosecution offered deals to the witnesses. And that is all that matters. Whether the witnesses in fact benefited, or would have testified regardless, is not dispositive. Accordingly, Reyna objects to the trial court's findings of fact and conclusions of law denying relief.

## II. The offer of leniency, not just agreed-upon deals, must be disclosed to the defense

In *United States v. Giglio* 405 U.S. 150, 152 (1972), the Supreme Court considered whether the government's failure to disclose an alleged promise of leniency made to a key witness in return for testimony violates a defendant's right to due process, thus requiring a new trial. In that

case, Giglio filed a motion for new trial based on newly discovered evidence indicating that the government failed to disclose a promise not to prosecute a key witness in the case in return for his testimony. *Id.* at 151. The Supreme Court found that at least one assistant United States attorney told the key witness that he would not be prosecuted if he cooperated with the government. *Id.* at 153. The failure to disclose the promise constituted a *Brady* violation and required a new trial because "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." *Id.* at 154 (citing *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

In *United States v. Bagley*, the Supreme Court considered whether failure to disclose impeachment evidence, that is, the possible bias or interest of a witness resulting from inducements made by the government, violated the defendant's right to a fair trial. 473 U.S. 667 (1985). In *Bagley*, defense counsel requested in discovery motions that the prosecutors disclose any inducements made to any witnesses. *Id.* at 669-70. The prosecution failed to disclose that it had given two key witnesses a possibility of financial reward for their testimony if the testimony led to the convic-

tion of the defendant in the case. *Id.* at 671. The Supreme Court remanded the case to the Court of Appeals to consider whether the testimony of the witnesses was "material." *Id.* at 684.

It is crucial to note that *offers* of leniency, not just firm deals, are required to be disclosed. In *Giglio*, the Supreme Court noted two offers: in one affidavit a promise was made to the witness that if he testified, he would not be prosecuted; in the second affidavit the witness was told he would definitely be prosecuted if he did not testify and that if he did testify he would be obliged to rely on the "good judgment and the conscience of the government" as to whether he would be prosecuted. *Giglio, supra*, 405 U.S. at 153. Thus, it appears to this Court that even in *Giglio*, there was some question as to the directness and unequivocality of the agreement not to prosecute.

This Court has likewise required the disclosure of offers of leniency. In *Burkhalter v. State* 493 S.W.2d 214 (Tex. Crim. App. 1973), both the witness and his attorney admitted that, although no direct promise of immunity from prosecution was ever conveyed to Whitehurst, he was told that his testimony "could help his case." This Court found it unrealistic

to draw a line between an outright promise not to prosecute and a very real inference not to prosecute.

## III. All three witnesses benefitted from their testimony

Michael Livermore, accompanied by his attorney, testified he sheltered Reyna while the police were searching for him. (RR4.15-22). At the time of his testimony, Livermore had pending charges for burglary and drug possession and was on probation for a gun charge. (RR4.25). Livermore's probation revocation hearing was reset while Reyna's case was pending. Ultimately, Livermore received only a 30-day sentence on the firearm charge and probation on the drug charge. The burglary case was reduced to a misdemeanor, for which Livermore received a thirty-day sentence. Livermore's records are attached as Exhibit D.

Jesus Cardenas, who also appeared as a witness accompanied by his attorney, had pending DWI and retaliation charges. (RR3.65) Additionally, he was facing sentencing in federal court on charges for possession of methamphetamine and possession of firearms. (RR3.103). Though his cases were reset during the pendency of Reyna's trial, he denied receiving any offer for assistance with his cases. (RR3.106, 118). Following

Reyna's trial, however, the pending State charges have never been re-solved, and the federal sentence was reduced because of his assistance to the State in Reyna's case. See Exhibits E (state records) and F (federal record).

Roman Medina, who also appeared as witness accompanied by his attorney, had pending charges of felon in possession of a firearm. According to his videotaped statement, made the day of his arrest (Exhibit G), Medina was immediately concerned about the charges against him. Although during his testimony Medina denied loading the weapons into his car, a contemporaneous police reports contradicts his trial testimony. See Exhibit H. Medina's case was repeatedly reset because Medina was serving as a witness. Less than one month after Reyna's trial, Medina's charge was reduced to a misdemeanor and he was sentenced to time served. See Exhibit I.

## IV. The evidence clearly indicates that each witness was offered leniency in exchange for his testimony

In recommending that Reyna's application for a writ of habeas corpus be denied, the trial court found, on the prosecutor's word alone, that no plea deals were offered. *See* Findings at 10. This is false.

First, the Court expressly addressed the deal Cardenas received. More significantly, though, there is no mention of the leniency accorded witnesses Livermore and Medina. The trial court has an obligation to address each and every claim raised.

In fact, all three witnesses had pending charges, and all three witnesses' cases were passed repeatedly until Reyna's case was tried. The reset forms explicitly indicate that resets were granted for anticipated testimony. The very existence of such an arrangement inherently proves an expectation of reward—there is no other reason to reset the case. Further, while the Court found that Medina and Cardenas would have testified anyway, the finding is undermined by the fact that resets were granted in order to procure their testimony. The only logical conclusion is that the state expected witness co-operation and was postponing sentencing to achieve that goal.

Moreover, Medina's attorney explicitly acknowledged that Medina had been threatened with a federal prosecution if he did not co-operate. (Writ Hearing-6) She also admitted telling Medina that his testimony would benefit him. (Writ Hearing-7) In order to get that benefit, his cases

were passed several times expressly so that he could testify. (Writ Hearing-7) Even though a specific bargain was not made, she understood that the disposition of his case would be based on his testimony. (Writ Hearing-7) She acknowledged the common practice that testimony would be rewarded. (Writ Hearing-8).

Livermore's attorney, too, testified that, while he did not remember the specific language used, he could not imagine permitting Livermore to testify without such an understanding. (Writ Hearing-23,24,28) Subsequently, the trial prosecutor advised Livermore's prosecutor of his testimony. (Writ Hearing-27)

In this case, Medina was expressly told that if he did not co-operate he would be charged federally. His attorney conveyed to him the usual practice that testimony is rewarded. To argue that he stood not to profit flies in the face of the record. Likewise, Livermore only testified because he expected to gain. His attorney, while not remembering the exact words, acknowledged the expectation. Yet the jury never heard about any of these arrangements.

## V. Conclusion

The trial court rejected Reyna's writ application because the prosecutor denied offering these witnesses deals. The evidence makes clear, though, that each testified as a result of offered leniency. Reyna thus objects to the trial court's findings of fact and conclusions of law.

## Prayer

Wherefore, premises considered, Applicant prays that this Court will grant his writ and remand the case for a new trial.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700
SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

Attorney for Applicant

## Certificate of Service

     A copy of these Objections has been mailed to the Appellate Section, Dallas County District Attorney's Office, 133 N. Riverfront Blvd., LB-19, Dallas, Texas, 75207 on <u>SEPTEMBER 10</u> 2015.


<u>/s/ Bruce Anton</u>
BRUCE ANTON